# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DEBRA JOHNSON, | |
| Plaintiff, | |
| v. | Civil Action No. 14-677 (JDB) |
| DISTRICT OF COLUMBIA, | |
| Defendant. | |

## MEMORANDUM OPINION

Plaintiff Debra Johnson brings this action under the Americans with Disabilities Act (ADA), 42 U.S.C. §12112 et seq., against defendant District of Columbia, where she was previously employed as a public school teacher. Johnson alleges that the District discriminated against her because of her disability, failed to accommodate several of her requests for reasonable accommodations, and terminated her in retaliation for protected activity. The District has moved for summary judgment on all counts. Its motion will be granted in part and denied in part.

## BACKGROUND

Except as otherwise indicated, the following facts are uncontested. Johnson began teaching for the District of Columbia Public Schools at Randle Highlands Elementary in 2008. The first events relevant to this case occurred during the 2011–2012 school year, at which time Johnson taught pre-kindergarten students, aged three to four. In fall 2011 Johnson sought medical treatment for back pain, as demonstrated by two doctors' treatment notes, dated September 29, 2011, and October 3, 2011. See Sept. 29, 2011 & Oct. 3, 2011, Treatment Notes [ECF Nos. 30-10 & 30-11]. The doctors stated that Johnson should be restricted from "frequent bending," "prolonged

standing," "heavy lifting," and anything else that would put a strain on her back. Sept. 29, 2011 & Oct. 3, 2011, Treatment Notes. The record does not conclusively reveal when or if Johnson submitted these specific notes to her school.[1] Johnson testified that she requested an aide to assist her in the classroom during the 2011–2012 school year in light of her back issues. See Johnson Dep. [ECF No. 25-3] at 46:12–47:16. By December, Johnson had at least two aides assigned to her classroom. See id. at 47:19–48:13; Dec. 2011 Schedule [ECF No. 30-12]. Responsibility for various classroom tasks was allocated between Johnson and the aides according to a schedule designed by Tracy Foster, the principal at Johnson's school. See Dec. 2011 Schedule.

In mid-February 2012, Johnson went on medical leave. About a month later, she had a meeting with a District official where she raised complaints regarding the District's alleged discrimination and failure to accommodate her disability. See May 25, 2012, Emails [ECF No. 30-14] at 3 (describing the March 16, 2012, meeting). In mid-May 2012, the District approved Johnson's request to treat a continuous block of absences stretching from February 21 to May 18 as medical leave under the Family and Medical Leave Act (FMLA). See May 9, 2012, Letter [ECF No. 25-5] at 1. The letter also indicated, however, that Johnson was expected to return to duty on May 21, 2012—and that the failure to notify her supervisor of her intent to do so within a specified period could be "considered a voluntary resignation from DCPS." Id. at 2. After receiving the District's letter, Johnson submitted a letter from one of her doctors requesting additional leave. See May 23, 2012, Letter [ECF No. 25-6]. The District informed Johnson that she had exhausted her leave under the FMLA and D.C. Family & Medical Leave Act (DCFMLA), but that it would consider her request for additional leave under the ADA upon receiving the necessary

---

[1] Both doctors' notes have been annotated by hand. Although the message is highly faded on the electronic versions available to the Court, the more legible of the two appears to say that the notes were "given to school before recovery of back 8-20-12." See Oct. 3, 2011, Treatment Note [ECF No. 30-11].

documentation from Johnson's doctor. See id. Johnson did not return to work for the remainder of the school year. During the summer, the District notified Johnson that it had failed to substantiate the allegations of discrimination and failure to accommodate that she had made in March. June 21, 2012, Letter [ECF No. 30-17].

Johnson returned to work on August 20, 2012, the first day of the 2012–2013 school year. No one appears to dispute that Johnson had been reassigned to second grade for that school year and that her classroom had been moved from the ground floor to the second floor of the building. But Johnson and the District agree about little else regarding the events of that day. According to Johnson, early that morning, the assistant principal denied her request for an aide to help set up her classroom and explained that she would not be assigned an aide for the coming school year. Johnson Dep. at 57:13–58:01. Johnson was thus forced to move "some things" in her classroom herself. Id. at 59:05–06. Later in the day, upon her own initiative, she asked two custodians to assist her with setting up her classroom, notwithstanding earlier instructions from the principal that custodians should not be helping teachers with that task. Id. at 58:08–59:03. The District disputes Johnson's account, offering declarations submitted by those custodians. Both individuals claim that they were expressly instructed by the assistant principal to help Johnson arrange her classroom, that the classroom was totally unorganized when they arrived, that they arranged the furniture at Johnson's instruction, and that Johnson did not move any furniture when they were in the room. See Decls. of Erik Griffin & Lionel Jenkins [ECF Nos. 27-1 & 27-2].

Whichever account is correct, what happened next is undisputed. The following day, Johnson did not come to work. Several days later, she submitted a claim for workers' compensation alleging a workplace injury on the first day of school, see Sept. 25, 2012, Letter [ECF No. 25-22], and a treatment note indicating that she was again being treated for back pain,

see Foster Dep. [ECF No. 25-2] at 16:03–16.  The note recommended that Johnson not return to work until she could have a disability evaluation.  Aug. 23, 2012, Treatment Note [ECF No. 30-18].  Another treatment note, prepared by Dr. William Burner in connection with a September 11, 2012, appointment, opined that "it was not in [Johnson's] best interest to continue work in child care or as a teacher."  Sept. 11, 2012, Treatment Note [ECF No. 30-19].  That same note recommended that Johnson avoid sitting, walking, or standing for more than 20 minutes at a time; bending or squatting; and lifting, pushing, or carrying more than ten pounds.  Id.  Having submitted these treatment notes, Johnson remained absent through the end of August and all of September.

On October 2, 2012, the District sent Johnson a letter noting that her workers' compensation claim had been denied.  See Oct. 2, 2012, Letter [ECF No. 25-7].  Under the District's reading of the previously submitted treatment notes, Johnson could "work with certain restrictions," which the District was prepared to honor.  Id.  But leave under the ADA, in the District's view, was unwarranted.  Because Johnson had exhausted her FMLA and DCFMLA leave, the District informed Johnson that she was expected to return to work on October 5, 2012—and that her failure to do so could be treated as a voluntary resignation.  Id.  Johnson responded with an October 4 letter, in which she asserted that she remained unable to report to work because of a disability.  Oct. 4, 2012, Letter [ECF No. 25-8].  The District replied the next day, explaining that it would consider her new request for leave as a request for a reasonable accommodation pursuant to the ADA as soon as it received some additional medical information from her doctor.  Oct. 5, 2012, Letter [ECF No. 25-9].  The District also informed Johnson that, if she failed to submit the necessary paperwork by October 9, she would be expected at work on October 10.  Id.  Johnson timely submitted the necessary paperwork.  See Oct. 9, 2012, ADA Resp. [ECF No. 30-

23].  She also submitted a pre-complaint questionnaire to the District alleging various forms of discrimination and retaliation.  See Oct. 10, 2012, Questionnaire [ECF No. 30-24].

Over the course of the next month, the District evaluated Johnson's new ADA request and discrimination complaint.  Johnson remained absent from work during this time.  On November 14, the District informed Johnson by letter that it was denying her request for extended leave under the ADA.  See Nov. 14, 2012, Letter [ECF No. 25-11].  Based on its review of a recently submitted medical evaluation (which had been performed by Dr. Pamela Cobb rather than Dr. Burner), the District concluded that Johnson did "not have any workplace restrictions."  Id.  Johnson was thus ordered to return to work by November 16, 2012, and warned that if she failed to do so she "may be separated from employment" for abandonment of position.  Id.  The next day Johnson responded by email to the District's return-to-duty letter.  See Nov. 15, 2012, Email [ECF No. 25-12].  She questioned the accuracy of the most recently submitted medical evaluation, referring the District back to the September 11 treatment note for information about the workplace restrictions that she required.  Id.  Johnson also put forward a new basis for extended leave: that she was being treated for "severe depression."  Id.  As support for that new request, Johnson submitted a new treatment note—this time from her psychiatrist, Dr. Shanda Smith—indicating she had "been ill and unable to work" since October 15 and that she would remain unable to work until December 7, when she would be reassessed.  See Nov. 15, 2012, Treatment Note [ECF No. 30-28].  The same day, the District informed Johnson that it had failed to substantiate the allegations in her pre-complaint questionnaire.  See Nov. 15, 2012, Letter [ECF No. 30-26].

The District promptly acted on this latest request for extended leave.  In a November 16 letter, the District agreed to evaluate Johnson's request so long as she submitted her ADA Request Form, Medical Release Form, and a questionnaire completed by Dr. Smith.  See Nov. 16, 2012,

Letter [ECF No. 25-13]. Without those materials, the District could not "make an informed assessment of [Johnson's] request for a reasonable accommodation." Id. The District also set a strict deadline: failure to return all the necessary paperwork or return to work by November 23 could be treated as a voluntary resignation of Johnson's position. See id. Johnson protested, claiming that it would take at least seven to ten days for her medical provider to turn the paperwork around, see Nov. 19, 2012, Email [ECF No. 30-30], especially given that the deadline was the day after Thanksgiving. Johnson did timely submit the request form and the medical release. See ADA Forms [ECF No. 30-29] at 5–6. But Dr. Smith did not submit her documentation until November 30, 2012. See Pl.'s Statement of Facts in Material Dispute [ECF No. 30-1] ¶ 24. Nor did Johnson return to work. Thus, the District notified Johnson that it considered her to have voluntarily resigned her position, pursuant to a D.C. municipal regulation. See Nov. 23, 2012, Letter [ECF No. 25-16].

Upon receiving Dr. Smith's letter on November 30, the District reviewed the submitted information and decided that it did not provide a basis to "change course." See Dec. 27, 2012, Letter [ECF No. 30-38]. In subsequent communications, Johnson maintained that Dr. Smith would provide more information if asked, see Jan. 7, 2012, Email [ECF No. 25-20], but Dr. Smith affirmed to the District when contacted that the half-page letter she had submitted on November 30 was meant to constitute her response to the ADA request, see Jan. 11, 2013, Email [ECF No. 25-21]. Ultimately, the District stood by its initial decision. Id. Johnson's "voluntary resignation" remained effective.

Johnson now alleges that the District of Columbia Public Schools discriminated against her because of her disability, failed to provide reasonable accommodations for her disabilities,

failed to engage in the good-faith interactive process required under the ADA, and retaliated against her for engaging in protected activities.  See Compl. [ECF No. 1] ¶¶ 36–40.

## **LEGAL STANDARD**

In evaluating a motion for summary judgment, a court must assess whether "the movant [has shown] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court must grant "summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is considered to be material based on the underlying substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.  However, the non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Id. at 256.

The function of the trial judge is "not himself to weigh the evidence and determine the truth of the matter." Id. at 249.  Instead, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Id. at 250.  "Evaluation of the credibility of witnesses must be left to the factfinder." United States v. Project on Gov't Oversight, 454 F.3d 306, 313 (D.C. Cir. 2006).  Furthermore, "[i]f the evidence presented on a dispositive issue is subject to conflicting

interpretations, or reasonable persons might differ as to its significance, summary judgment is improper." Greenberg v. FDA, 803 F.2d 1213, 1216 (D.C. Cir. 1986).

## DISCUSSION

### A. Discrimination and Retaliation

In order to prove unlawful discrimination under the ADA, a plaintiff must demonstrate that she suffered an adverse employment action because of her disability. Adeyemi v. District of Columbia, 525 F.3d 1222, 1226 (D.C. Cir. 2008). And to prove unlawful retaliation, she must show that she engaged in protected activity, that she was subjected to an adverse action by her employer, and that there was a causal link between the two. Doak v. Johnson, 798 F.3d 1096, 1107 (D.C. Cir. 2015).

Discrimination and retaliation claims have traditionally been evaluated based on the burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which requires the plaintiff first to lay out a prima facie case of discrimination or retaliation. If the employer can then provide a legitimate reason for the allegedly discriminatory or retaliatory action, the burden shifts back onto the plaintiff to demonstrate that the employer's proffered reason was pretextual and that the real reason for the adverse action was discriminatory or retaliatory. Id. at 807. But where, as here, an employer has already asserted a legitimate reason for the alleged discriminatory or retaliatory action, this burden shifting framework is a "'largely unnecessary sideshow.'" Adeyemi, 525 F.3d at 1226 (quoting Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008)). A district court resolving a motion for summary judgment should instead focus on the "central inquiry": "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory [or non-retaliatory] reason

was not the actual reason and that the employer intentionally discriminated [or retaliated] against the plaintiff on a prohibited basis." Id.

Johnson alleges that the District retaliated against her for requesting reasonable accommodations when it "terminated" her employment on November 23. See Compl. ¶¶ 39–40. But her discrimination claims are harder to discern. When Johnson's opposition refers to "discrimination," it is either recounting her protected activities, see Pl.'s Opp'n [ECF No. 29] at 2, 5–6, 8–9, 30, addressing her accommodation claims, see id. at 19–20, or alleging pretext, see id. at 31–32. And the ADA itself defines discrimination as the failure to provide reasonable accommodations. See 42 U.S.C. § 12112(b)(5). Thus, it is not clear that she has a discrimination claim that is distinct from her claims of retaliation and failure to accommodate. To the extent Johnson does have a stand-alone discrimination claim, though, it appears to be related to her termination. See Compl. ¶¶ 35–36. The Court will therefore proceed as if Johnson alleges that her termination was both discriminatory and retaliatory.

The District tries to defeat Johnson's discriminatory and retaliatory discharge claims by arguing that she has not actually suffered an adverse employment action. See Def.'s Mot. [ECF No. 25] at 18–20. According to the District, Johnson "voluntarily resign[ed]" her position when she failed to abide by the November 23 deadline and, under D.C. regulations, her "voluntary resignation" cannot constitute an adverse action. See Nov. 23, 2012, Letter. The Court doubts that the District can use its employment regulations to preempt federal law in that manner. By all indications, Johnson wanted to retain her position as a teacher, but the District separated her from that position unilaterally. In any event, the Court need not decide whether Johnson's separation was an adverse action. Her discrimination and retaliation claims fail because no reasonable jury could conclude that the District's proffered reason for Johnson's separation was pretextual.

According to the District, Johnson was separated from employment because she neither returned the necessary ADA paperwork nor returned to work by November 23, 2012. That was the reason provided to Johnson in the letter deeming her voluntarily resigned. See id. It is the reason unanimously provided by the relevant actors. See Jefferson Dep. [ECF No. 25-17] at 8:15–9:02 (District official in Office of Talent and Culture); Smith Dep. [ECF No. 25-19] at 25:15–26:02 (District Equal Employment Opportunity manager); Pitts Dep. [ECF No. 30-5] at 7:19–8:02 (District official in Labor Management and Employee Relations); Reich Dep. [ECF No. 30-6] at 12:03–12:11 (same). And the District's explanation is well supported by the record. By the time she was separated from her employment in November 2012, Johnson had been absent from work for at least six months over two school years, interrupted by only one day of work in August 2012. The evidence plainly conveys the District's desire for Johnson to return to work as soon as possible and its repeated use of tight deadlines to accomplish that end. See May 9, 2012, Letter (requiring Johnson to return to work on May 21 and provide advance notice of her intent to do so); Oct. 2, 2012, Letter (requiring Johnson to return to work by October 5); Oct. 5, 2012, Letter (requiring Johnson to submit ADA paperwork by October 9 or return to work by October 10); Nov. 14, 2012, Letter (requiring Johnson to return to work by November 16); Nov. 16, 2012, Letter (requiring Johnson to return to work or submit ADA paperwork by November 23).

Johnson's November 23 deadline came and went. She did not submit all of the necessary paperwork. Nor did she report to work. So the District did exactly as it said it might do, and separated Johnson from employment. An employee's failure to report to work or submit necessary paperwork can be a legitimate basis for termination. See Minter v. District of Columbia, 809 F.3d 66, 70–71 (D.C. Cir. 2015); Davis v. George Washington Univ., 26 F. Supp. 3d 103, 131 (D.D.C. 2014) (employer's discharge of employee for missing work after entering a "last chance"

agreement was legitimate); Diggs v. Potter, 700 F. Supp. 2d 20, 47 (D.D.C. 2010) (employee's failures to report to work and provide medical documentation were legitimate bases for employer action); Porter v. Jackson, 668 F. Supp. 2d 222, 235 (D.D.C. 2009) (employer's termination of employee for failure to report to duty station was legitimate).   So too here—unless Johnson can point to evidence sufficient to convince a reasonable jury that the District's stated reasons were pretextual.

Unfortunately for Johnson, she cannot do so.  Johnson first relies on the temporal proximity between her requests for accommodation and complaints of discrimination,  on the one hand, and the District's decision to separate her from employment, on the other.  See Pl.'s Opp'n at 30. Johnson is correct that there exists a tight temporal proximity  between her protected activity and the District's action.  But she is mistaken if she thinks that this proximity  alone can help defeat summary judgment.  At summary judgment, "'positive evidence beyond mere proximity is required to defeat the presumption  that the [District's] proffered explanations are genuine.'" Hamilton v. Geithner, 666 F.3d 1344, 1359 (D.C. Cir. 2012) (quoting Woodruff v. Peters, 482 F.3d 521, 530 (D.C. Cir. 2007)).

Johnson's  search for such positive  evidence  comes up empty.  She contends that the District's explanation  is "not credible" because the District knew she needed additional  time to complete the paperwork, that she was currently undergoing  medical treatment, that its deadline was the day after Thanksgiving,  and that extending it would not cause any undue hardship for the District.  See Pl.'s Opp'n at 32.  In short, Johnson argues that the District's deadline—and its decision to strictly enforce it—was unfair.  But that is not a winning argument.  "The question is never whether the employer was mistaken, cruel, unethical, out of his head, or downright irrational in taking the action for the stated reason, but simply  whether the stated reason was his reason: not

a good reason, but the true reason." <u>Diggs</u>, 700 F. Supp. 2d at 48–49 (internal quotation marks omitted); <u>see</u> <u>Woodruff</u>, 482 F.3d at 531 ("We review not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers." (internal quotation marks omitted)). Johnson thus gains no traction by arguing that the District's deadline was unfair.

Johnson also points to "discriminatory remarks" allegedly made by her principal, Tracy Foster, in August 2011. According to Johnson's complaint, when she informed Foster that she was receiving medical treatment for her lower back, Foster called her "ill" and said she did not want "sick" teachers at her school. Compl. ¶¶ 13–14. Johnson struggled to recall this episode during her deposition but, after being read the allegations in her complaint, testified that the complaint's recitation was accurate. Johnson Dep. at 22:07–29:01. Even if Foster made those comments, however, they would not help Johnson resist summary judgment. Foster "was not involved" in the process of Johnson's separation. Foster Dep. at 11:03–10. And stray remarks by non-decision makers are insufficient to raise an inference of discrimination or retaliation. <u>See</u> <u>Aliotta v. Blair</u>, 614 F.3d 556, 570 n.6 (D.C. Cir. 2010).

For all these reasons, the District is entitled to summary judgment on Johnson's discrimination and retaliation claims. She simply has not produced sufficient evidence for a jury to conclude that the District's asserted reason for Johnson's termination was pretextual.

## B. Failure to Accommodate and Engage in the Interactive Process

Some of Johnson's accommodation claims, however, survive the District's motion for summary judgment. To prevail on a failure to accommodate claim, Johnson must show that she was disabled within the meaning of the ADA, that the District had notice of her disability, that with reasonable accommodations she could perform the essential functions of her job, and that the

District refused to make such accommodations.  Etheridge v. FedChoice Fed. Credit Union, 789 F. Supp. 2d 27, 35 (D.D.C. 2011).  For purposes of this motion, the District is willing to concede the first three elements, including that Johnson was "disabled" within the meaning of the statute. The dispute thus focuses on the last element: whether the District denied Johnson reasonable accommodations for her disability.  See Def.'s Mot. at 13–14.

The ADA "does not provide a comprehensive definition of 'reasonable accommodation,' but it gives examples of what the term "may include."  Taylor v. Rice, 451 F.3d 898, 908 (D.C. Cir. 2006) (citing 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.2(o)).  Few types of accommodation are categorically unreasonable as a matter of law. Doak, 798 F.3d at 1105.  On the facts of a particular case, however, an accommodation may be unreasonable "if it either imposes undue financial and administrative burdens or requires a fundamental alteration in the nature of the employer's program."  Taylor, 451 F.3d at 908 (internal quotation marks and alterations omitted). The ADA contemplates a "flexible give-and-take between employer and employee so that together they can determine what accommodation would enable the employee to continue working."  Ward v. McDonald, 762 F.3d 24, 32 (D.C. Cir. 2014).  Equal Employment Opportunity Commission regulations call this the "interactive process."  See 29 C.F.R. § 1630.2(o)(3).

"An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied." Flemmings v. Howard Univ., 198 F.3d 857, 861 (D.C. Cir. 1999).  An employee can establish that her request for an accommodation was "denied" if she can establish that her employer either ended the interactive process or participated in it in bad faith.  Ward, 762 F.3d at 32.  Both employers and employees have obligations in the interactive process.  See Beck v. Univ. of Wisc. Bd. of Regents, 75 F.3d 1130, 1135 (7th Cir. 1996).  "Neither party should be able to cause a breakdown

in the process for the purpose of either avoiding or inflicting liability." <u>Ward</u>, 762 F.3d at 32 (internal quotation marks and brackets omitted). When evaluating the parties' participation in the interactive process, a court should "look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary." <u>Id.</u> (internal quotation marks omitted). Specifically, a party that "obstructs or delays the interactive process" or "fails to communicate" may be acting in bad faith. <u>Id.</u> (internal quotation marks omitted). In short, "courts should attempt to isolate the cause of the breakdown and then assign responsibility." <u>Id.</u> (internal quotation marks omitted). With that framework in mind, the Court turns to Johnson's allegations that the District denied her reasonable accommodations.

### 1. 2011–2012 School Year

Johnson's first failure to accommodate claim focuses on the period from fall 2011 until February 2012. <u>See</u> Pl.'s Opp'n at 20–21. Johnson contends that, in late September and early October, she submitted two treatment notes indicating that she should avoid prolonged standing, frequent bending, heavy lifting, or other activities that would put strain on her lower back. <u>See</u> Sept. 29, 2011 & Oct. 3, 2011 Treatment Notes. Johnson has further testified that during that same period she requested that the District assign an aide to assist her in her classroom. Johnson Dep. at 46:12–47:07. According to Johnson, the District denied these requests by assigning her tasks beyond her physical restrictions and providing aides who were unreliable.

Any reasonable jury, however, would conclude that Johnson received accommodations akin to what she had requested. How exactly she ended up with these accommodations is somewhat hard to pin down: at the time of her testimony, Foster could not remember Johnson ever asking for such accommodations. <u>See</u> Foster Dep. at 17:19–18:07. Johnson similarly testified

that, during a December 2011 meeting, Foster was unaware of Johnson's back issues. See Johnson

Dep. at 49:21–50:01.   But all this notwithstanding, by December 2011 there were two aides

assigned to Johnson's classroom.   See id. at 47:19–48:13.   And Foster, for her part, had designed

a schedule allocating classroom responsibilities between Johnson and her two aides.   Under that

schedule, potentially physically demanding tasks had been assigned to an aide or jointly to Johnson

and an aide—although lunch cleanup and the distribution of homework into students' backpacks

had been assigned to Johnson alone.   See Dec. 2011 Schedule.

Johnson now claims this arrangement was inadequate to accommodate her back issues—

both because the tasks assigned to her proved too demanding and because her aides sometimes

failed to perform the tasks they were assigned.   See, e.g., Johnson Dep. at 50:02–10.   But this

argument fails.   The District had created an arrangement for Johnson "closely tracking" her

accommodation requests; if there was a shortcoming in the District's approach, it was incumbent

upon Johnson to raise it through the interactive process.   See Hodges v. District of Columbia, Civ.

No. 12-1675 (TSC), 2016 WL 1222213, at *6 (D.D.C. Mar. 28, 2016); see also Beck, 75 F.3d at

1137 (employee was responsible for breakdown in the interactive process because, after receiving

some accommodations from her employer, she never "[told her employer] exactly what [more] she

needed").   Although Johnson apparently met with a representative of the District in March 2012

to complain about an alleged failure to accommodate her back issues, see May 25, 2012, Email

[ECF No. 30-14], by this time she had gone out on leave, thus putting her situation beyond the

District's control.   Still the District offered to "discuss certain strategies to make [her] workplace

more comfortable" upon her return.   May 7, 2012, Email [ECF No. 30-16].   At that point, it was

all the District could do.   Because Johnson received accommodations for her back issues during

the 2011–2012 school year, and because she failed to inform the District through the interactive

process that she considered the accommodations to be inadequate, the District is entitled to summary judgment on Johnson's claim as to this period. See Hodges, 2016 WL 1222213, at *6–7.

### 2. First Day of School 2012

However, a reasonable jury could conclude that the District denied Johnson a reasonable accommodation on the first day of the 2012–2013 school year. Johnson contends that the trouble started right away, when she discovered that she had been moved from a classroom on the school's ground floor to one on the second floor. See Johnson Dep. at 53:18–54:07. Johnson testified that she asked for aides to help set up her classroom, but her request was denied by the assistant principal who informed her that she would not have the assistance of aides for the coming school year. See id. at 57:09–58:01. Johnson explains that she eventually convinced two custodians to help her set up the classroom—but only after she had done some of the work herself, thereby aggravating her back injury. See id. at 58:08–59:06.

In response, the District raises factual objections to Johnson's account. Def.'s Reply [ECF No. 32] at 5–7. According to the District, the two custodians were explicitly enlisted by the assistant principal to help Johnson, and they did so before she had moved any of the furniture in her classroom. See Decls. of Erik Griffin & Lionel Jenkins. But the Court cannot properly resolve this factual dispute at summary judgment; it is the factfinder that must decide which account to believe. United States v. Project on Gov't Oversight, 454 F.3d 306, 313 (D.C. Cir. 2006). And if the factfinder believes Johnson, then it could conclude that the District denied her a reasonable accommodation, notwithstanding her direct request for assistance and the District's prior knowledge of her back issues. As to the first day of the 2012–2013 school year, then, the District's motion for summary judgment must be denied.

### 3. 2012 Requests for Leave Based on Back Issues

Nor is the District entitled to summary judgment regarding its final rejection of Johnson's back-related accommodation requests. Throughout the fall of 2012, Johnson remained absent from work but submitted multiple requests for leave under the ADA. See Aug. 23, 2012, Treatment Note; Sept. 11, 2012, Treatment Note; Oct. 4, 2012, Letter. One of those requests, a September 11, 2012, treatment note by Dr. William Burner, also outlined a number of physical restrictions: in his view, Johnson should have been restricted from sitting, walking, or standing for more than twenty minutes at a time; bending or squatting; or lifting, pushing, or carrying more than ten pounds. Once it received these requests, the District properly requested additional information from Johnson's medical provider. See Oct. 5, 2012, Letter; see also Stewart v. St. Elizabeths Hosp., 589 F.3d 1305, 1308–09 (D.C. Cir. 2010) (explaining that employers may request medical documentation when the need for an accommodation is not obvious).

The District received Johnson's medical records, which have been filed in this case under seal. Although the records contained some entries made by Dr. Burner, the most recent examination detailed in the records was conducted by Dr. Pamela Cobb, who found no significant issues with Johnson's back and did not recommend any workplace restrictions. Having reviewed Johnson's medical records, the District denied Johnson's requests for extended leave. See Nov. 14, 2012, Letter. The District went one step further, moreover, concluding that Johnson did "not have any workplace restrictions." Id. Johnson protested by email, referring to Dr. Burner's September 11, 2012, treatment note for a description of the accommodations that she believed she required. Nov. 15, 2012, Email. But the District held firm. In a reply email, the District's EEO

manager explained that "the medical documentation did not indicate a need for extended medical leave or workplace restrictions."[2] Id. (emphasis added).

The District thinks it is entitled to summary judgment on this point—although the precise reason is not clear from its briefs. Its position appears to be that it was not "unreasonable" to order Johnson back to work without restriction based on the medical information obtained from Drs. Burner and Cobb. See Def.'s Reply at 8. But here the District has backed itself into a corner. Whether Johnson was entitled to some workplace restrictions logically depends on the extent of her physical disability—and for purposes of this motion, the District has conceded that Johnson was disabled within the meaning of the ADA. See Def.'s Mot. at 13–14. Even if the District intends to contest the extent of Johnson's disability, that raises an issue of material fact that cannot be resolved at summary judgment on the current record. There is evidence in the record to support a view that Johnson's disability was in fact more serious than the District now contends. Johnson's strongest evidence is Dr. Burner's September 11, 2012, treatment note, which recommended a number of workplace restrictions and extended leave. The District evidently believed that Dr. Cobb's assessment, which recommended no workplace restrictions, was more credible than Dr. Burner's note.[3] But a reasonable jury could disagree—especially given Johnson's protestation that Dr. Burner was her "Orthopedic Doctor and [had] been treating [her] since 2011." See Nov. 15, 2012, Email. Thus, as to the District's final denial of Johnson's back-related accommodations, its motion for summary judgment will be denied.

---

[2] In its motion, the District implies that the November 14 return-to-duty letter contained a promise to honor the restrictions recommended in Dr. Burner's September 11 treatment note, denying only Johnson's request for "further accommodations." Def.'s Mot. at 9. In the Court's view, however, the plain language of the mid-November communications defeats that reading. At the very least, the meaning of these communications presents a question for the factfinder.

[3] The District also contends that Dr. Burner's recommendation was not supported by the notes of his September 11, 2012, examination of Johnson's back. Def.'s Reply at 8. This is also properly a question for the factfinder.

### 4.  2012 Request for Leave Based on Depression

The remainder of Johnson's claims focus on the District's denial of her November 15, 2012, request for medical leave to accommodate her depression.  Johnson argues that the District constructively denied her request by "end[ing] the interactive process" or by "participat[ing] in the process in bad faith," Ward, 762 F.3d at 32, when it gave her a short deadline to submit medical information and then fired her for her failure to meet it, see Pl.'s Opp'n at 23–29.

It is unclear from the record whether the District also denied Johnson's request on the merits, i.e., concluded that she was not entitled to leave as a reasonable accommodation for depression.  Some of the relevant actors think the District never reached that question.  See Reich Dep. at 21:04–05 ("We never had any sufficient information to make a determination."); Jefferson Dep. at 14:14–19 ("No, I didn't make that determination [that Johnson did not suffer from a disability under the law].").  The letter closing Johnson's case, however, indicates otherwise. There, the District conveyed its belief that the information provided did not indicate Johnson was disabled under the law and that, therefore, she was "not entitled" to an accommodation.  See Jan. 11, 2013, Email [ECF No. 25-21]; see also Smith Dep. at 27:03–28:07.   Yet this factual ambiguity is immaterial.   Even if the District did eventually reach the merits of Johnson's accommodation request, its decision was superfluous so long as Johnson remained separated from her employment. Hence, the process by which the District made and reconsidered its separation decision is the appropriate focal point of analysis.

By this point, the events leading up to Johnson's separation from employment need not be recounted in detail.  A short summary will suffice.  Johnson first raised the issue of her depression on November 15.  The next day the District gave her one week, until November 23, to submit ADA paperwork, including a questionnaire completed by her psychiatrist, Dr. Smith.  Johnson

sought an extension, which the District denied.  When Johnson failed to submit documentation from Dr. Smith or return to work by the November 23 deadline, the District separated her from employment.

Johnson first contends that the District's refusal to extend the November 23 deadline was not in good faith.  According to Johnson, the District should have extended the deadline based on its knowledge of her depression, her statement that she would need at least seven to ten days to obtain the necessary information, the District's professed willingness to grant similar extensions on a case-by-case basis, and the interruption caused by the Thanksgiving holiday.  See Pl.'s Opp'n at 27–28.  But the District had good faith bases to deny Johnson an extension, which were summarized in the deposition of Erica Smith, the EEO manager who denied the request.  First, Smith considered that Johnson had not claimed that Dr. Smith was out of the office over Thanksgiving.  See Smith Dep. at 42:19–20.  Smith further considered the speed with which Johnson had obtained information from her doctors in the past.  Id. 42:20–43:01.  Indeed, on November 15, Johnson had promised the District a treatment note from Dr. Smith and provided it on the same day.  See Nov. 15, 2012, Email & Treatment Note.  Finally, Smith believed that Johnson was nearing three consecutive months of unauthorized leave, and that a further extension was unwarranted under those circumstances.  See Smith Dep. at 43:19–44:06.  Johnson has not introduced any evidence that would cast doubt on the sincerity of Smith's motives.  And without such evidence, the Court has no basis on which to conclude that the District acted in bad faith.

The District's conduct following Johnson's separation from employment is also indicative of good faith.  From late November 2012 to mid-January 2013, the District continued to interact with Johnson regarding her situation.  Dr. Smith submitted a half-page letter about Johnson's depression on November 30.  See Nov. 30, 2012, Letter [ECF No. 30-35].  Finding the letter

unresponsive to some of its requests, the District deemed it insufficient. <u>See</u> Dec. 3, 2012, Email [ECF No. 25-18]. Although the District had considered the "late-submitted documentation," it kept Johnson's "voluntary resignation" in place and "considered [the] matter closed." Dec. 27, 2012, Letter [ECF No. 30-38]. Yet the District continued to engage with Johnson. For example, in response to Johnson's request for a meeting, a meeting was held on January 4, 2013, with various District representatives including Crystal Jefferson, a District official with the authority to reverse Johnson's "voluntary termination." <u>See</u> Jefferson Dep. at 12:07–11. After the meeting, Johnson followed up by email to say that Dr. Smith was available to provide additional information in response to the District's requests. <u>See</u> Jan. 7, 2013, Email. Erica Smith dutifully followed up with Dr. Smith, who indicated that her letter represented her response to the District's inquiries. <u>See</u> Smith Dep. at 36:16–38:21; Jan. 11, 2012, Email. Only then did the District close Johnson's case for good, without reversing Johnson's separation from employment.

Johnson now finds fault with aspects of the District's post-separation conduct. In particular, she alleges that the District should have deemed Dr. Smith's response compliant with its earlier request for information. Pl.'s Opp'n at 25–26. She also faults Erica Smith for not trying harder to extract responsive information from Dr. Smith over the phone in January 2013. <u>See</u> <u>id.</u> at 28–29. But these assertions are unsupported by the record.

First, no reasonable jury could find that Dr. Smith's letter was a helpful response. To take one example, the District's questionnaire attached Johnson's job description and asked Dr. Smith to indicate "[w]hich essential job functions . . . would be affected by the medical condition/impairment and to what extent and duration." <u>See</u> ADA Forms at 8. The questionnaire further cautioned Dr. Smith that "a letter or note, in lieu of responding specifically[] to the questions above, may not provide the information that is needed." <u>Id.</u> Despite that warning, Dr.

Smith's half-page response provides no comment at all on Johnson's ability to perform her "essential job functions."

Second, a reasonable jury would conclude that Erica Smith was diligent in her conversation following up with Dr. Smith. See Smith Dep. at 37:09–38:21 (explaining that Dr. Smith had said she "understood" that the District was asking about Johnson's ability to perform the "essential functions" of her job and indicated that "the note that she provided on November 30th was her response."). Between November 2012 and January 2013, "[a]t no point did the [District] fail to respond in some manner to [Johnson's] requests for accommodation, and there is nothing in the record from which we can discern any attempt by the [District] to sweep the problem under the rug." Beck, 75 F.3d at 1136. Because the District participated in the interactive process in good faith, it did not constructively deny Johnson's request for leave. Therefore, as to Johnson's request for extended leave based on her depression, the District's motion for summary judgment will be granted.

## CONCLUSION

For the foregoing reasons, the District's motion for summary judgment will be granted as to Johnson's discrimination and retaliation claims. But because a reasonable jury could conclude that the District denied Johnson a reasonable accommodation by requiring her to set up her classroom without assistance on the first day of the 2012–2013 school year and by ordering her to return to duty without restrictions on November 16, 2012, the District's motion for summary judgment will be denied in part as to Johnson's accommodation claims. A status conference is hereby set for October 13, 2016, at 9:30 a.m. in Courtroom 30A in order to discuss next steps in this case.

A separate Order has issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: September 14, 2016